UNITED STATES DISTRICT COURT <u>FOR ONLINE PUBLICATION</u>
EASTERN DISTRICT OF NEW YORK <u>ONLY</u>
---------------------------------------------------------------- X
RICARDO JOSE RUIZ, :
a.k.a. Jose Ricardo Ruiz, :
                       Petitioner, :
                                 : MEMORANDUM
                                 : <u>AND ORDER</u>
       - against - :
                                 :
U.S. DEPARTMENT OF HOMELAND :        07 CV 2615 (JG)
SECURITY, U.S. IMMIGRATION AND :
CUSTOMS ENFORCEMENT, :
                      Respondents. :
---------------------------------------------------------------- X
JOSE RICARDO RUIZ, :
a.k.a. Ricardo Jose Ruiz, :
                       Petitioner, :
                                 :
       - against - :        07 CV 5173 (JG)
                                 :
U.S. DEPARTMENT OF HOMELAND :
SECURITY, U.S. IMMIGRATION AND :
CUSTOMS ENFORCEMENT, :
                      Respondents. :
---------------------------------------------------------------- X

A P P E A R A N C E S :

      RICARDO JOSE RUIZ
            03-R-4935
            Pike County Correctional Facility
            175 Pike County Blvd.
            Lords Valley, PA 18428
            Petitioner, *Pro Se*

      ANDREW M. CUOMO
            Attorney General of the State of New York
            120 Broadway
            New York, New York 10271
      By:   Jennifer L. Johnson
            Ashlyn Dannelly
            Attorney for Respondents

JOHN GLEESON, United States District Judge:

Ricardo Jose Ruiz, currently being held in immigration detention at the Pike County Correctional Facility in Pennsylvania, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Ruiz was incarcerated pursuant to a judgment of the New York State Supreme Court, Queens County, and he was released to parole supervision on January 26, 2007, conditioned upon the federal authorities seeking his removal from the United States. Ruiz challenges his conviction following a bench trial of one count of burglary in the first degree, one count of criminal trespass in the second degree, two counts of aggravated criminal contempt, five counts of criminal contempt in the first degree, and two counts of assault in the third degree. He seeks habeas relief on several grounds, including, that the evidence was insufficient to support the conviction and that he received ineffective assistance of counsel. Oral argument was held on March 20, 2008. For the reasons set forth below, the petition is denied.

BACKGROUND

A.      *The Offense Conduct*

The government's evidence at trial established that on July 18, 2002, Ruiz violated a temporary order of protection against him when he went to the home of his ex-girlfriend, Sarah Williams. Ruiz knocked on Williams's apartment door and shouted from outside that she should let him in. Hoping that Ruiz would cease knocking, Williams remained silent for about thirty minutes. Soon after the knocking stopped, a large rock crashed through her kitchen window, shattering the glass. Fearing that Ruiz would enter her apartment through the broken window, Williams ran outside with her phone. Ruiz intercepted her, knocked the phone from her hand, and punched her in her face. He then picked up a chair from the patio and hit her

head, face and arms with it.  He also threw flower pots from the patio at her as she escaped into the streets.  Borrowing a phone from a nearby pedestrian, Williams dialed 911.

By the time the police arrived, Ruiz had disappeared.  Williams helped the police canvass the area, and they found Ruiz about one block from her apartment.  He was arrested, and Williams was taken by ambulance to Elmhurst Hospital, where she remained for about four hours.  Her face was swollen, her lips were bleeding and blistered, and her arms were bruised.  She was given an injection and advised to take Advil or aspirin.  She was unable to raise her arms, and the pain to her lips and arms lasted several weeks.

Police Officer Andy Wong drove Williams to the police station and then drove her home to gather the chair and the rock used in the attack.  They found the chair in the middle of the street in front of Williams's apartment.  The rock was still on her kitchen floor.  They returned to the 108th Precinct, where Police Officer Joseph Thomson observed her injuries and photographed them along with the rock and chair.

A few months later, at around 2:00 AM on January 1, 2003, Williams encountered Ruiz at a New Year's party in an upstairs apartment in Williams's building.  Upon seeing him, Williams immediately left the party, accompanied by Ruiz's sister and another friend.  Ruiz followed her to her apartment door, pushed her into her apartment and started punching her in the face and head.  She was unable to call the police because Ruiz had pulled the telephone wires from the wall, but she was able to escape through her back door.  Reaching a neighbor's apartment, she dialed 911 from her neighbor's phone and awaited the arrival of the police.  Ruiz found her waiting for the police near her neighbor's stairwell, and again began to hit her.  Party-goers and other neighbors intervened and Ruiz left her alone.

The police arrived after Ruiz had fled the scene. They observed that Williams had attempted to barricade her door with furniture, and that the apartment was in disarray. The officers canvassed the area for Ruiz but did not find him. Paramedics tended to Williams's swollen eyes and bleeding and swollen lips. The cut to her lip and the pain to her face lasted approximately four weeks.

After the paramedics left, Williams went to bed, but she awoke around 7:00 AM. When Williams left her apartment to retrieve the newspaper, Ruiz, who had been standing adjacent to the door, pushed his way into her living room. Williams fled from Ruiz, running upstairs to a neighbor. She dialed 911, the police arrived, and they arrested Ruiz. One of the officers observed that Williams had a cut to her lip and confirmed that Ruiz had ripped the telephone wires from the wall. The police took Ruiz to the 108th Precinct to process his arrest. He was then taken to Elmhurst Hospital to tend to an unrelated injury. Williams did not give Ruiz consent to enter her home.

Ruiz was the only defense witness at trial. He testified that he and Williams had known each other for 17 years and lived together for most of that time. They were also heavy drinkers. In July of 2002, Ruiz was employed on a project on Long Island, and he occasionally stayed with Williams overnight. He testified that he knew of the order of protection, but Williams had told him that she had waived it.

Ruiz testified that he had been dancing with another woman when Williams encountered him at the New Year's party. Later, around 2:00 AM, Ruiz and Williams began to argue with each other in the presence of Ruiz's sister. He said that he then returned to the party, but the police arrived about fifteen minutes later. He went downstairs to explain that there was no problem but he was placed under arrest and taken to the precinct for booking and then to

Elmhurst Hospital for detoxification due to alcohol consumption. Ruiz testified that he can not be held responsible for the 7:00 AM attack because he was in police custody at that time.

B.      *The Procedural History*

        1.      *The Trial Court Proceedings*

                Ruiz was charged with one count of burglary in the first degree, one count of burglary in the second degree, two counts of aggravated criminal contempt, five counts of criminal contempt in the first degree, three counts of criminal contempt in the second degree, and one count of criminal mischief in the fourth degree. The trial court, sitting as the fact finder, convicted Ruiz of one count of burglary in the first degree, one count of criminal trespass in the second degree, two counts of aggravated criminal contempt, five counts of criminal contempt in the first degree and two counts of assault in the third degree. On September 10, 2003, he was sentenced to a five-year term of imprisonment for the burglary conviction and concurrent lesser sentences for his other convictions. Additionally, the court issued an order of protection for Williams lasting until September 9, 2008.

        2.      *The Direct Appeal*

                On appeal to the Appellate Division, Second Department, Ruiz contended that (1) the government offered insufficient proof of "physical injury" to sustain Ruiz's convictions for the crimes committed on January 1, 2003, and (2) the government did not refute Ruiz's testimony that Williams had told him that the order of protection was not in effect as of November 2002, and therefore there was insufficient proof that he had entered Williams's apartment unlawfully on January 1, 2003. Ruiz submitted a *pro se* supplemental brief in which he argued that (1) the evidence did not establish that the July 18, 2002 attack occurred or that

Williams was significantly injured on that date; (2) he was not aware that Williams had an operative order of protection against him as of January 1, 2003, for Williams had told him that it was waived; (3) his appointed trial counsel was ineffective because he failed to investigate Ruiz's case; and (4) his counsel was inattentive due to the fact that Ruiz is Hispanic and was unfamiliar with the law.  On January 16, 2007, the Appellate Division affirmed the conviction, holding that Ruiz's claim that the evidence was insufficient to establish Williams's physical injuries and his claim that he was unaware that he was violating an order of protection were unpreserved.  In the alternative, the Court held that "viewing the evidence in the light most favorable to the prosecution, . . . it was legally sufficient to establish [Ruiz's] guilt beyond a reasonable doubt.  *People v. Ruiz*, 831 N.Y.S.2d 178 (2d Dep't 2007).  Additionally, the court held that Ruiz's ineffectiveness claims could not be reviewed on direct appeal because they involved "matters dehors the record."  *Id.*  James sought leave to appeal, and the New York Court of Appeals denied that application on April 5, 2007.  *People v. Ruiz*, 8 N.Y.3d 949 (2007).

On April 30, 2007, Ruiz submitted a letter to the Appellate Division, Second Department, where he claimed that he received ineffective assistance of counsel on the grounds that counsel (1) failed to secure logs from the 108th Precinct that would have shown that Ruiz was arrested at a different time than the time established at trial; (2) failed to subpoena the tape of the second 911 call made by Williams on January 1, 2003; (3) failed to subpoena Ruiz's sister and "Lisa," the woman he was dancing with that night, who was one of Williams's neighbors; (4) failed to adequately investigate petitioner's case; (5) failed to cross-examine Williams or the police officers who testified for the prosecution;  (6) left Ruiz's case mid-trial, for a full month, to work on a different case; (7) failed to hire an investigator to canvass Williams's neighborhood to find a witness who would testify that Ruiz had lived with Williams for the six years prior to

the January 1, 2003 incident; and (8) was biased against Ruiz because he did not speak English or understand the law.   The Clerk's Office of the Appellate Division rejected the submission because Ruiz had already received the one direct appeal of his conviction available to him under state law, and leave to appeal had already been denied.  Ex. P.

3.     *The Instant Petition*

Ruiz initially filed a petition in the Southern District of New York, but because a substantial part of the alleged events giving rise to Ruiz's claim arose in the Eastern District, the petition was transferred to this district.  In Ruiz's initial papers, he raised the following claims: (1)  "the case was already dismissed"; (2) the conviction was obtained by a plea of guilty "which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea"; (3) his conviction was obtained "by a violation" and "no evidence was obtained"; and (4) the conviction was obtained by an "unconstitutional failure of the prosecution to disclose to the defendant evidence favorable" to him, and the government prosecuted charges that had already been dismissed.   On July 12, 2007, I ordered the Ruiz to clarify his claims, and in response he submitted a letter that reduced his claims to the following: (1) the government submitted insufficient proof of his guilt at trial; and (2) Ruiz received ineffective assistance from his trial counsel, specifically that his counsel did not offer him any kind of help during the trial.

Ruiz submitted a second *pro se* habeas petition dated September 10, 2007 in the Southern District of New York.  Ruiz's second petition was also transferred to this district, and Judge Dora Irizarry was assigned to the case.  But because I was assigned to handle Ruiz's first challenge to the 2003 Queens County conviction, this second petition was reassigned to me and on January 30, 2008, the petitions were consolidated.

Ruiz claims in the second petition that (1) his trial counsel was ineffective for (a) failing to secure logs from the 108th Precinct that would have allegedly shown that Ruiz was arrested at a different time than the time established at trial; (b) failing to subpoena the tape of the second 911 call made by Williams on January 1, 2003; (c) failing to subpoena Ruiz's sister and "Lisa"; (d) failing to adequately investigate his case; (e) failing to cross-examine Williams or the police officers who testified for the prosecution; (f) leaving Ruiz's case mid-trial, for a full month, to work on a different case; (g) failing to hire an investigator to canvass Williams's neighborhood to find a witness who would testify that Ruiz had lived with Williams for the six years prior to the January 1, 2003 incident; and (h) being biased against Ruiz because he did not speak English or understand the law. Ruiz also claims that (2) the trial court erred in not allowing Ruiz to address or enter any evidence in his defense; (3) the evidence was legally insufficient and the verdict was against the weight of the evidence because there was no "concrete evidence that Ruiz had attacked Williams on July 18, 2002 or on January 1, 2003; (4) the prosecutor and the trial court were biased against Ruiz because he did not understand the law or speak English; (5) he is innocent of all charges, and was not aware that there was an order of protection against him at the time of the attack; and (6) the prosecution's witnesses testified falsely.

DISCUSSION

A.     *Standard of Review*

1.     *AEDPA Deference*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the

reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has

added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

2. *Procedural Default*

Where there has been actual and explicit reliance upon a procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 255, 261 (1989); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *see also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *but see Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

Where the state appellate court rejects a state prisoner's claim as procedurally defaulted, the claim may be considered on federal habeas review only upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "'that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Coleman*, 501 U.S. at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This fundamental miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

B.     *Ruiz's Claims*

1.     *Sufficiency of the Evidence*

Ruiz claims that there was insufficient proof that he caused Williams "physical injury" during the January 1, 2003 attack, and accordingly the government failed to prove

beyond a reasonable doubt that he is guilty of burglary in the first degree, aggravated criminal contempt, and assault in the third degree.  Additionally, Ruiz contends that there was insufficient proof that he entered Williams's apartment unlawfully on January 1, 2003, and therefore the government failed to prove beyond a reasonable doubt that he is guilty of burglary, aggravated criminal contempt, criminal trespass or criminal contempt in the first degree.  Finally, Ruiz claims that there was insufficient evidence that he had attacked Williams on July 18, 2002 or that she had suffered significant injuries as a result of that attack.  The Appellate Division rejected these claims as unpreserved, and therefore the claims are procedurally barred.  Ruiz has not shown cause for the default or prejudice resulting therefrom, nor has he shown that a miscarriage of justice will result if I fail to review them.  Accordingly, Ruiz's claims are denied.

　　　　　In any event, the Appellate Division's alternative holding that these claims are without merit was neither contrary to nor an unreasonable application of federal law.　A habeas petitioner "challenging the sufficiency of the evidence bears a very heavy burden."　*Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks omitted).  A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."　*Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In making this assessment, a court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)).  Under this "rigorous standard," a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not

affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

In this case, when the evidence is viewed in the light most favorable to the government, it is clear that a rational trier of fact could have found that the evidence presented by the government at trial established James's guilt of burglary in the first degree, aggravated criminal contempt, and assault in the third degree beyond a reasonable doubt. Specifically, there was sufficient evidence for a reasonable jury to find that Ruiz caused Williams to sustain physical injury as a result of the January 1, 2003 attack. Physical injury is defined as either "impairment of physical condition" or "substantial pain." N.Y. Penal Law § 10.00(9). "Whether the 'substantial pain' necessary to establish physical injury within the meaning of Penal Law § 10.00 (9) has been proven is generally a question for the trier of fact." *See In re Ramon M*., 487 N.Y.S.2d 76 (2d Dep't 1985).

The government's evidence showed that on January 1, 2003 Ruiz repeatedly punched Williams's face and head causing her to suffer swollen eyes and swollen and cut lips. Though she did not go to the hospital, the paramedics tended to her injuries, and the injuries to her face lasted approximately four weeks. This evidence satisfies the requirement for proving physical injury under New York law. *See, e.g.*, *People v. Guidice*, 83 N.Y.2d 630, 636 (1994) (victim's testimony that his arm became swollen and discolored and that he suffered pain sufficient to show physical injury); *People v. Thomas,* 690 N.Y.S.2d 695 (2d Dep't 1993) (emergency medical treatment supports a finding of "substantial pain"); *Foster v. Miller*, No. 04-cv-7990 (BSJ) (JCF), 2007 WL 1893726, S.D.N.Y. June 29, 2007) (finding "physical injury" where the victim was punched twice in the head and face, sustained a split lip, had headaches

that lasted two or three days, and pain that persisted for a week).   Therefore, the Appellate Division's conclusion that there was sufficient evidence that Ruiz caused Williams physical injury on January 1, 2003 was neither contrary to nor an unreasonable application of federal law.

Similarly, viewing the evidence in the light most favorable to the government, it is clear that a rational jury could conclude that Williams had suffered "substantial pain," after the July 18, 2002 attack.   The government's evidence established that after the attack, Williams was taken to Elmhurst Hospital for the injuries sustained by Ruiz's punches to her face and hits to her head, face, and arms.   She suffered from swollen, bleeding and blistered lips and bruising on her arms.   She was unable to raise her arms.   The cut to her lip lasted between four and six weeks and the pain to her arms lasted about six weeks.   Again, the government provided sufficient evidence (in the form of testimony and photographs) of the attack and of the resulting physical injury.

Ruiz's third sufficiency claim -- that the government presented insufficient proof that Ruiz is guilty of criminal contempt in the first degree, burglary in the first degree and criminal trespass -- is meritless, and the Appellate Division's rejection of this claim was neither contrary to nor an unreasonable application of federal law.

Criminal contempt in the first degree is defined as engaging in proscribed conduct "in violation of a duly served order of protection, or such order of which the defendant has actual knowledge because he or she was present in the court when such order was issued . . . ."  N.Y. Penal Law §§ 215.51, 215.52.   On appeal, however, Ruiz conceded that he entered Williams's apartment twice on January 1, 2003 and that such entry was prohibited by an order of protection. He also testified at trial that the judge had given him a copy of the order of protection that required him to stay away from Williams and her apartment.  Tr. 211-12, 226-27.   And clearly

he violated this order when he entered Williams's apartment on January 1, 2003 without, according to Williams's testimony, her consent.

To prove that a defendant is guilty of burglary in the first degree and criminal trespass, the government must provide evidence that the defendant "knowingly entere[ed] or remain[ed] unlawfully in a dwelling." N.Y. Penal Law §§ 140.30, 140.15. Although Ruiz argues that he was lawfully in Williams's apartment because he had entered with permission, Williams's own testimony contradicted him and the jury was entitled to credit her testimony.

2. *Ineffectiveness of Trial Counsel*

Ruiz argues that his trial counsel was ineffective because counsel (1) did not provide Ruiz with "help" at trial and did not adequately investigate Ruiz's case; (2) failed to secure police logs from the 108th Precinct that allegedly would have shown that Ruiz was arrested at a different time than the time established at trial; (3) failed to subpoena the tape of the second 911 call made by Williams on January 1, 2003; (4) failed to subpoena Ruiz's sister and "Lisa", the woman Ruiz danced with at the New Year's Eve party; (5) failed to cross-examine Williams or the police officers who testified for the prosecution; (6) left Ruiz's case mid-trial, for a full month, to work on a different case; (7) failed to hire an investigator to canvass Williams's neighborhood to find a witness who would testify that Ruiz lived with Williams for the six years prior to the January 1, 2003 incident; and (8) was biased against Ruiz because he did not speak English or understand the law.

Ruiz raised the first, third, sixth, and eighth claims on direct appeal, but the Appellate Division rejected the claims as matters outside the record that should properly be brought in a post-conviction motion pursuant to N.Y. Crim. Proc. Law § 440.10. Ruiz failed to raise these claims in a § 440 motion, and therefore these claims remain unexhausted.

Notwithstanding the fact that the claims are unexhausted, I deny these claims as meritless. *See Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002) (a district court confronted with a mixed petition of exhausted and unexhausted claims can deny the petition on the merits despite the unexhausted claims).

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) ("[C]ounsel has wide latitude in deciding how best to represent a client ...."). The

Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), instead emphasizing that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" *id.* (quoting *Strickland*, 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland,* 466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome," *id.* at 694. This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

Ruiz's first and eighth claims -- that trial counsel did not provide "help", did not fully investigate Ruiz's case, and was biased against Ruiz because he did not speak English -- are belied by the record. The record depicts Ruiz's lawyer as a zealous advocate, who ably navigated through each stage of defense representation. From the pre-trial discovery phase to pre-trial motion practice to counsel's competent examination and cross-examination of witnesses, Ruiz benefited from help of effective counsel who evinced no bias against him.

Ruiz's claim that counsel was ineffective because he failed to subpoena the tape of Williams's second 911 call on January 1, 2003 is likewise without merit. Ruiz argues that the tape of the call would have helped him prove that he was in police custody at the time of the second attack, and therefore he could not have entered Williams's apartment at 7:00 AM. Officer Garcia, Officer Mantone and Williams all testified as to the sequence of events,

providing overwhelming evidence that Ruiz was arrested after the 7:00 AM attack. Trial counsel attempted to counter the government's version of the facts by eliciting testimony from Ruiz that he was in police custody and under hospital care at the time of the attack. Trial Tr. 204-05. And in fact, counsel subpoenaed the hospital records in an effort to prove that claim, only to find that the records did not support it at all. In light of the unhelpful hospital records, counsel was not required by the Sixth Amendment to pursue Ruiz's claim further by obtaining the 911 tape.

Ruiz also argues that he received ineffective assistance because his trial counsel abandoned his defense mid-trial. This argument is wholly unsupported by the facts in the record. Ruiz's trial lasted about four days; the verdict was rendered three days later; and he was sentenced three months later.[1]

Ruiz raised the remaining ineffective assistance claims in his second appeal to the Appellate Division, but because he had already brought a direct appeal for which leave to appeal to the New York Court of Appeals had been denied, the Appellate Division had no authority to review Ruiz's additional claims. These remaining claims are therefore unexhausted. These claims, however, could have been resolved solely on the basis of the record, so collateral review is not a proper mechanism for review of these claims. Accordingly, the remaining claims are deemed in procedural default under *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). Ruiz has not shown cause for the default or prejudice resulting therefrom, nor has he shown that a miscarriage of justice will result if the claim is not reviewed. Accordingly, the claim is denied.

In any event, the remaining claims are without merit. Ruiz argues that his counsel was ineffective because he failed to secure police logs from the 108th Precinct for the morning of January 1, 2003. After the subpoenaed hospital records proved fruitless, counsel no

---

[1] Sentencing was delayed from an earlier sentencing date due to counsel's motion to set aside the verdict.

doubt reasonably thought it futile to subpoena these police logs. Regardless, he applied for a continuance from the court so that he could comply with Ruiz's request. But the trial court denied counsel's request for a continuance. Trial Tr. 240. In light of the overwhelming evidence that Ruiz was not in police custody at the time of the phone call, trial counsel's approach did not amount to ineffective assistance of counsel.

Additionally, Ruiz's argument that counsel was ineffective because he failed to secure the testimony of Ruiz's sister or of Williams's neighbor, Lisa, is likewise unsupported by the record. Indeed, the record reflects that counsel actually made every effort to locate Ruiz's sister and Lisa, but Ruiz's sister would not respond to any phone calls. Counsel even procured the services of an investigator to help him find the sister and Lisa. However, the record reflects that they were not located in time for the trial. Counsel's efforts undermine Ruiz's claim that counsel failed to provide effective assistance in not subpoenaing these two witnesses. Ruiz's claim is therefore without merit. *See United States v. Vargas,* 920 F.2d 167, 170 (2d Cir.1990) (petitioner's affidavit that witness would have provided exculpatory testimony was insufficient to render attorney's decision not to call witness unreasonable); *see also Rodriguez v. Portuondo*, No. 01-CV-0547, 2006 WL 2168314 (S.D.N.Y. Aug. 1, 2006).

Ruiz's claim that counsel was ineffective because he failed to cross-examine the government's witnesses is flatly contradicted by the record, for counsel adequately cross-examined Williams, Mantone and Garcia. Trial Tr. 100-146; 157-60; 170-71.

Ruiz's final ineffective assistance claim -- that counsel should have hired an investigator to canvass Williams's neighborhood to find a witness who would testify that Ruiz lived with Williams for the six years prior to the January 1, 2003 incident -- is likewise without merit. Counsel made every effort to locate Lisa and Ruiz's sister, individuals who would

certainly have been in a position to testify as to the veracity of Ruiz's statement that he lived with Williams prior to the 2003 incident. Counsel was under no obligation to hire an investigator to follow through on Ruiz's vague statements that someone could have testified as to his relationship. *See Morales v. United States*, 199 F.3d 1322 (2d Cir. 1999); *see also Farr v. Grenier*, No. 01-CV-6921, 2007 WL 1094160, *32 (E.D.N.Y. Apr. 10, 2007) (finding that "vague" claims that counsel failed to investigate or call at trial witnesses who would have been helpful to the defense does not qualify as ineffective assistance of counsel). This claim is therefore without merit.

3.      *Ruiz's Remaining Claims*

In his second petition, Ruiz alleges that (1) the trial court would not allow him to present a defense; (2) the prosecutor and trial court were biased against him because he did not understand or speak English; (3) the prosecution's witnesses testified falsely at trial; and (4) Ruiz is innocent.   These claims are unexhausted, but because there is no state forum where Ruiz can adjudicate these claims, they are deemed procedurally barred under *Aparicio v. Artuz*. Ruiz has shown neither cause for the default, nor prejudice resulting therefrom. He has not shown that a miscarriage of justice will result if I do not review these claims. Therefore, I deny these claims as procedurally barred.

In any event, the remaining claims are without merit, for the record wholly contradicts them. Indeed, the transcript provides impeccable evidence that the trial court allowed Ruiz to present a defense; in fact, he testified in his own defense. A Spanish interpreter was provided for Ruiz, and counsel subjected the prosecution's witnesses to cross-examination. Additionally, Ruiz does not allege a specific instance in which the state court or the prosecutor exhibited bias against him, and my review of the records reveals no such bias.

Ruiz's claim that the prosecution's witnesses committed perjury amounts to a challenge to the weight of the evidence, and is not cognizable for habeas review. *Young v. Abrams*, 698 F.2d 131, 135 (2d Cir. 1983). Likewise, to the extent that Ruiz is claiming "actual innocence," such a claim is not cognizable as a free-standing habeas claim. *See Herrara v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *see also Greene v. Walker*, 205 F.3d 1322, 1322 (2d Cir. 1999). To the extent that his claim of innocence is equivalent to a claim of insufficient evidence to support the conviction, that claim is denied in light the government's evidence, as discussed in the section B1.

## CONCLUSION

For the foregoing reasons, the petition is denied. As Ruiz has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.


John Gleeson, U.S.D.J.

Dated: April 1, 2008
      Brooklyn, New York